RECEIVED

MAY - 8 2009 ⟋⟍

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

RICHARD THIBODEAUX

VERSUS

M-I, L.L.C., ET AL

CIVIL ACTION NO. 6:07-1278

JUDGE DOHERTY

MAGISTRATE JUDGE METHVIN

## MEMORANDUM RULING

Currently pending before the Court is a motion for summary judgment filed by defendants,

Kerr-McGee Oil & Gas Corporation ("Kerr-McGee") and Diamond Offshore services Company

("Diamond"), seeking dismissal of all claims filed against them by plaintiff.[1] [Doc. 54]

### Factual Background

Plaintiff, an oilfield service technician employed by M-I, L.L.C. ("M-I"), alleges he was

injured when he slipped and fell on a muddy floor on the M/V OCEAN CONCORD, a vessel owned

by Diamond and chartered by Kerr-McGee, while he was removing an auger system M-I had

previously installed on the vessel.[2]  The following facts, taken from plaintiff's "Statement of

---

[1]Since the filing of the motion, the Court has ruled on cross-motions for summary judgment, which addressed plaintiff's status as a seaman under the Jones Act. [Doc. 60] In those motions, plaintiff's employer, M-I, L.L.C., sought a judgment finding plaintiff was not a Jones Act seaman; plaintiff sought a judgment finding he was a Jones Act seaman. Diamond and Kerr-McGee filed a memorandum in opposition to plaintiff's motion. [Doc. 42] The Court granted M-I's motion, and denied plaintiff's motion, thereby finding plaintiff was not a Jones Act seaman. (Specifically, the Court found plaintiff did not have a connection to a vessel or fleet of vessels.) As a result, the only remaining claim in this matter is for general maritime negligence, as plaintiff's Jones Act negligence, unseaworthiness and maintenance and cure claims are not available to him, as he is not a seaman. Accordingly, this Ruling does not address those portions of defendants' pending motion which seek dismissal of plaintiff's claims for Jones Act negligence and unseaworthiness, as those claims are now moot.

[2]The M/V OCEAN CONCORD is a semi-submersible drilling rig, which was being moved from one location to another at the time of plaintiff's alleged injuries. [Doc. 54, p.1; 54-8, ¶10]

**RECEIVED**

MAY - 8 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

RICHARD THIBODEAUX                          CIVIL ACTION NO. 6:07-1278

VERSUS                                      JUDGE DOHERTY

M-I, L.L.C., ET AL                          MAGISTRATE JUDGE METHVIN

## MEMORANDUM RULING

Currently pending before the Court is a motion for summary judgment filed by defendants, Kerr-McGee Oil & Gas Corporation ("Kerr-McGee") and Diamond Offshore services Company ("Diamond"), seeking dismissal of all claims filed against them by plaintiff.[1] [Doc. 54]

## Factual Background

Plaintiff, an oilfield service technician employed by M-I, L.L.C. ("M-I"), alleges he was injured when he slipped and fell on a muddy floor on the M/V OCEAN CONCORD, a vessel owned by Diamond and chartered by Kerr-McGee, while he was removing an auger system M-I had previously installed on the vessel.[2] The following facts, taken from plaintiff's "Statement of

---

[1] Since the filing of the motion, the Court has ruled on cross-motions for summary judgment, which addressed plaintiff's status as a seaman under the Jones Act. [Doc. 60] In those motions, plaintiff's employer, M-I, L.L.C., sought a judgment finding plaintiff was not a Jones Act seaman; plaintiff sought a judgment finding he was a Jones Act seaman. Diamond and Kerr-McGee filed a memorandum in opposition to plaintiff's motion. [Doc. 42] The Court granted M-I's motion, and denied plaintiff's motion, thereby finding plaintiff was not a Jones Act seaman. (Specifically, the Court found plaintiff did not have a connection to a vessel or fleet of vessels.) As a result, the only remaining claim in this matter is for general maritime negligence, as plaintiff's Jones Act negligence, unseaworthiness and maintenance and cure claims are not available to him, as he is not a seaman. Accordingly, this Ruling does not address those portions of defendants' pending motion which seek dismissal of plaintiff's claims for Jones Act negligence and unseaworthiness, as those claims are now moot.

[2] The M/V OCEAN CONCORD is a semi-submersible drilling rig, which was being moved from one location to another at the time of plaintiff's alleged injuries. [Doc. 54, p.1; 54-8, ¶10]

RECEIVED

MAY - 8 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

RICHARD THIBODEAUX

VERSUS

M-I, L.L.C., ET AL

CIVIL ACTION NO. 6:07-1278

JUDGE DOHERTY

MAGISTRATE JUDGE METHVIN

## MEMORANDUM RULING

Currently pending before the Court is a motion for summary judgment filed by defendants,

Kerr-McGee Oil & Gas Corporation ("Kerr-McGee") and Diamond Offshore services Company

("Diamond"), seeking dismissal of all claims filed against them by plaintiff.[1] [Doc. 54]

## Factual Background

Plaintiff, an oilfield service technician employed by M-I, L.L.C. ("M-I"), alleges he was

injured when he slipped and fell on a muddy floor on the M/V OCEAN CONCORD, a vessel owned

by Diamond and chartered by Kerr-McGee, while he was removing an auger system M-I had

previously installed on the vessel.[2] The following facts, taken from plaintiff's "Statement of

---

[1] Since the filing of the motion, the Court has ruled on cross-motions for summary judgment, which addressed plaintiff's status as a seaman under the Jones Act. [Doc. 60] In those motions, plaintiff's employer, M-I, L.L.C., sought a judgment finding plaintiff was not a Jones Act seaman; plaintiff sought a judgment finding he was a Jones Act seaman. Diamond and Kerr-McGee filed a memorandum in opposition to plaintiff's motion. [Doc. 42] The Court granted M-I's motion, and denied plaintiff's motion, thereby finding plaintiff was not a Jones Act seaman. (Specifically, the Court found plaintiff did not have a connection to a vessel or fleet of vessels.) As a result, the only remaining claim in this matter is for general maritime negligence, as plaintiff's Jones Act negligence, unseaworthiness and maintenance and cure claims are not available to him, as he is not a seaman. Accordingly, this Ruling does not address those portions of defendants' pending motion which seek dismissal of plaintiff's claims for Jones Act negligence and unseaworthiness, as those claims are now moot.

[2] The M/V OCEAN CONCORD is a semi-submersible drilling rig, which was being moved from one location to another at the time of plaintiff's alleged injuries. [Doc. 54, p.1; 54-8, ¶10]

RECEIVED

MAY - 8 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

RICHARD THIBODEAUX

VERSUS

M-I, L.L.C., ET AL

CIVIL ACTION NO. 6:07-1278

JUDGE DOHERTY

MAGISTRATE JUDGE METHVIN

## MEMORANDUM RULING

Currently pending before the Court is a motion for summary judgment filed by defendants,

Kerr-McGee Oil & Gas Corporation ("Kerr-McGee") and Diamond Offshore services Company

("Diamond"), seeking dismissal of all claims filed against them by plaintiff.[1] [Doc. 54]

### Factual Background

Plaintiff, an oilfield service technician employed by M-I, L.L.C. ("M-I"), alleges he was

injured when he slipped and fell on a muddy floor on the M/V OCEAN CONCORD, a vessel owned

by Diamond and chartered by Kerr-McGee, while he was removing an auger system M-I had

previously installed on the vessel.[2] The following facts, taken from plaintiff's "Statement of

---

[1] Since the filing of the motion, the Court has ruled on cross-motions for summary judgment,
which addressed plaintiff's status as a seaman under the Jones Act. [Doc. 60] In those motions, plaintiff's
employer, M-I, L.L.C., sought a judgment finding plaintiff was not a Jones Act seaman; plaintiff sought a
judgment finding he was a Jones Act seaman. Diamond and Kerr-McGee filed a memorandum in
opposition to plaintiff's motion. [Doc. 42] The Court granted M-I's motion, and denied plaintiff's
motion, thereby finding plaintiff was not a Jones Act seaman. (Specifically, the Court found plaintiff did
not have a connection to a vessel or fleet of vessels.) As a result, the only remaining claim in this matter
is for general maritime negligence, as plaintiff's Jones Act negligence, unseaworthiness and maintenance
and cure claims are not available to him, as he is not a seaman. Accordingly, this Ruling does not
address those portions of defendants' pending motion which seek dismissal of plaintiff's claims for Jones
Act negligence and unseaworthiness, as those claims are now moot.

[2] The M/V OCEAN CONCORD is a semi-submersible drilling rig, which was being moved from
one location to another at the time of plaintiff's alleged injuries. [Doc. 54, p.1; 54-8, ¶10]

Uncontested Material Facts," are accepted as accurate for purposes of this motion:

> 1) Richard Thibodeaux began his employment [as a service technician] with M-I [an oilfield contractor] on March 31, 2005;

> . . .

> 5) He was assigned to the M/V Ocean Concord on April 18, 2005 where he worked rigging down M-I equipment through April 21, 2005;

> 6) He sustained his injuries on or about April 19, 2005 while aboard the M/V Ocean Concord;

> 7) At the time of the accident, the M/V Ocean Concord was owned by Diamond Drilling Company;

> 8) Kerr-McGee Operating Company chartered the M/V Ocean Concord during the entire time that Richard Thibodeaux was aboard the vessel;

> 9) M-I did not own and/or charter the M/V Ocean Concord;

> 10) Richard Thibodeaux was assigned to the M/V Ocean Concord to work under and assist another M-I employee by the name of Joshua Johnson to remove M-I equipment from the M/V Ocean Concord;

> . . .

> 12) M-I is an oilfield service contractor providing drilling mud and other related services to oilfield drillers/operators;

> 13) M-I does not own drilling rigs;

> . . .

> 15) M-I was unable to provide additional M-I employees and/or equipment for the work performed on the M/V Ocean Concord;

> 16) Mr. Johnson, the senior service technician, requested but was not provided additional personnel and/or equipment from Diamond M initially;

[Doc. 56-3]

Additionally, the following facts (taken from defendants' "Statement of Uncontested Material Facts") are accepted as accurate[3]:

6.      Plaintiff's training with M-I included safety course tests, water survival school and rigging school, all of which he completed. See *Exhibit A - Deposition of Plaintiff at pp. 17-18*.

...

13.      No employee or representative of Kerr-McGee directed Plaintiff how to accomplish rigging down of M-I equipment. See *Exhibit A - Deposition of Plaintiff at p. 69; Exhibit D - Deposition of Gant at p.22*.[4]

14.      It was M-I's responsibility to rig down their equipment and M-I was in charge of the job during which Plaintiff was allegedly injured. See *Exhibit C - Deposition of Dietzen at pp. 23, 62; Exhibit A - Deposition of Plaintiff at pp. 208-209*.[5]

---

[3] The Local Rules for the Western District of Louisiana require the party moving for summary judgment to submit a statement of "the material facts as to which the moving party contends there is no genuine issue to be tried." LR56.1. Any party opposing summary judgment must file a "statement of the material facts as to which there exists a genuine issue to be tried." LR 56.2. In this matter, plaintiff opposes summary judgment, yet rather than file a statement of facts which are disputed, he instead filed a statement of facts which are not in dispute. He did not address defendants statement of undisputed facts at all. Local Rule 56.2 further states "All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Accordingly, the Court deems the statement of undisputed facts, as set forth by defendants, to be undisputed by plaintiff. (The Court additionally notes plaintiff has not opposed the facts listed above within the body of his opposition memorandum.)

[4] The cited portion of plaintiff's deposition reads as follows:

Q      So when you say Kerr-McGee, meaning he wasn't telling y'all to hurry up?

A      Oh, yes, sir, he was rushing us. I mean, a lot.

Q      But he wasn't telling you what to remove first?

A      No, sir, he didn't tell us what to remove first. He just wanted it rigged down and off the rig.

[5] The Court notes the cited portion of plaintiff's deposition states, in pertinent part (as it will be referenced later in this Ruling):

15. Before his alleged injuries, Plaintiff testified that he was slipping in the mud on the floor, he noted the "sloppy" condition of the work area caused by M-I's activities in removing its equipment, and "knew" that someone was going to get hurt. See *Exhibit A* - Deposition of Plaintiff at pp. 64-65.

16. Before his alleged injuries, Plaintiff and/or his M-I supervisor hosed some of the troughs out causing mud to fly "all over the walls, all over the floors." See *Exhibit A* - Deposition of Plaintiff at pp. 79-80, 82, 110.

17. Before hosing the troughs, there was no mud on the floor. See *Exhibit A* - Deposition of Plaintiff at p. 83.

18. The mess on the floor resulted from Plaintiff and/or his supervisor's activity in cleaning the mud out of the auger system equipment before or while dismantling it. See *Exhibit A* - Deposition of Plaintiff at p. 87.

19. Plaintiff was moving the second-to-last auger to the door when he allegedly slipped in mud on the floor and hurt his back. See *Exhibit A* - Deposition of Plaintiff at pp. 71-72.

20. Plaintiff worked the same or a more demanding schedule on his previous job aboard the M/V ROWAN ALASKA. See *Exhibit C* - Deposition of Dietzen at pp. 44, 45-47; *Exhibit A* - Deposition of Plaintiff at pp. 139-140.

21. Come-alongs are packed in M-I's toolboxes. See *Exhibit C* - Deposition of Dietzen at p. 31.

22. Come-alongs and chain hoists should have been accessible to Plaintiff in M-I's toolbox on the M/V OCEAN CONCORD. See *Exhibit C* - Deposition of Dietzen at pp. 31-32.

23. Come-alongs were readily accessible to anyone on the M/V OCEAN CONCORD in an unlocked area. See *Exhibit D* - Deposition of Gant at p. 113.

---

Q    All right. The welder [who from the information before the Court, appears to be a Diamond employee, who M-I requested assist its employees in removing the auger system - *see* Depo. of Gant at p.22] was not in charge of your job, rigging down M-I equipment?

A    No, sir.

## Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. Proc. 56(e).

"The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case." Capitol Indem. Corp. v. U.S., 452 F.3d 428, 430 (5th Cir. 2006). "Summary judgment is properly granted if the record does not contain appropriate summary judgment evidence which would sustain a finding in the nonmovant's favor on any issue as to which the nonmovant would bear the burden of proof at trial." Id. at 430-31. As noted by the Fifth Circuit:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the

nonmovant.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "the court must view facts and inferences in the light most favorable to the party opposing the motion." Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party." Id. In evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

## Analysis

"It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630 (U.S. 1959).[6] To prove negligence under general maritime law, "The plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury." In re Cooper/T. Smith, 929 F.2d

---

[6]See also id. at 632 ("We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case.")

1073, 1077 (5th Cir. 1991). "Whether a defendant owes a plaintiff a legal duty is a question of law."

Canal Barge Co., Inc. v. Torco Oil Co., 220 F.3d 370, 376 (5th cir. 2000)(internal quotations

omitted). "[T]he determination of whether a party owes a duty to another depends on a variety of

factors, 'most notably the forseeability of the harm suffered by the complaining party.'" Id. (quoting

Consolidated Aluminum Corp. v. C.F. Bean Corp., 833 F.2d 65, 67 (5th Cir. 1987).

The allegation of negligence contained in plaintiff's complaint states as follows:

V.

Said accident and injuries were caused by the negligence of **M-I, KERR, and DIAMOND** in the following respects, among others:

1) Failure to provide the Plaintiff with a safe place in which to work;

2) Failure to supply the Plaintiff with a sufficient number of competent supervisors and/or superiors;

3) Failure to properly superintend and supervise the work going on at the time;

4) Failure to supply the Plaintiff with a sufficient number of competent and trained personnel;

5) Failure to promulgate and enforce proper and safe rules for the safe conduct of said work and to warn the Plaintiff of the dangers;

6) Failing to supply the vessel with proper equipment and supplies in spite of knowing of the problems that would result from having to cut the augers and equipment loose and attempt to carry heavy pieces thereof across a slick deck;

7) Failure to provide proper training and communications between personnel on the vessel and supervisory personnel onshore or on platforms or vessels;

8) Failure to provide a seaworthy vessel;

9) Failing to supple the vessel with proper supplies and equipment in spite of knowing of the dangers;

10)     In attempting an operation under dangerous conditions;

11)     Failure to provide adequate medical treatment to the Plaintiff post-accident;

12)     Failure to comply with appropriate governmental regulations;

13)     Failure to comply with customary industry procedures; and

14)     Failure to comply with their own regulations and procedures.

[Doc. 1, ¶ V]

In defendants' motion, they state the allegations contained above in numbers 1-7, 9 and 10 apply only to "duties owed by an employer to its employee," and because defendants were not plaintiff's employer, those allegations are not applicable to these defendants. [Doc. 54-9, p.2] With regard to allegation number 8 (unseaworthiness), defendants state:

> [T]he only theory of liability pled by Plaintiff against Diamond and Kerr-McGee is unseaworthiness of the M/V OCEAN CONCORD. Because Plaintiff is not a Jones Act seaman and cannot establish the M/V OCEAN CONCORD was not reasonably fit for its intended use, summary judgment should be granted on this issue.

[Id.] Defendants do not address items numbered 11 through 14 above in their motion or memorandum. However, as plaintiff also does not address items numbered 11 through 14 in his opposition to defendants' summary judgment motion, and as defendants' seek summary judgment on all claims, the Court presumes either: (a) those allegations pertain to M-I rather than Diamond or Kerr-McGee, or (b) plaintiff has waived any negligence claim premised upon those allegations.

Defendants argue summary judgment should be granted in their favor as to any negligence claim brought pursuant to general maritime law. Defendants state:

> Moreover, although not pled in his Complaint, Plaintiff alleged in his deposition that Kerr-McGee's company man "rushed" him and his supervisor to

remove the M-I equipment quickly. Plaintiff also claimed that Diamond did not provide Plaintiff with come-alongs with which he could accomplish his job. Analyzing these allegations under general maritime law, Plaintiff cannot establish that Kerr-McGee had a legal duty not to "rush" him.... Additionally, Plaintiff cannot show that Diamond had a duty to provide him with come-alongs.

[Doc. 54, p. 2][7]

The Court finds the only duty owed plaintiff by Kerr-McGee and Diamond, was "the duty of exercising reasonable care under the circumstances." <u>Kermarec</u> at 632. The allegations noted above (*i.e.* defendants rushed plaintiff and did not provide him with come-alongs) pertain to whether or not defendants breached their duty of reasonable care.

**A. Whether defendants breached their duty of exercising reasonable care**

Defendants contend they did not breach their duty of reasonable care. [Doc. 54, p. 12] On this issue, defendants argue as follows:

Plaintiff not only observed the dangerous conditions that he alleges caused his injuries, but worked in them for some time before allegedly slipping. Before his alleged slip, Plaintiff testified that he was slipping in the mud on the floor and he noted the "sloppy" condition of the work area caused by M-I's activities in removing its equipment. See *Exhibit A* - Deposition of Plaintiff at pp. 64-65. He claims that he "knew" that someone was going to get hurt because the conditions were very unsafe. *Id.* at pp. 64-65, 201-211. Before his alleged injuries, Plaintiff believes that he or his M-I supervisor hosed some of the troughs out causing mud to fly "all over the walls, all over the floors." *Id.* at pp. 79-80, 82. Before hosing the troughs, there was no mud on the floor. *Id.* at p. 83. The mess on the floor was due to trying to clean the mud out of the auger system equipment before or while dismantling it. *Id.* at p. 87. Plaintiff was moving the second-to-last auger to the door when he allegedly slipped in mud on the floor and hurt his back. *Id.* at pp. 71-72.

Furthermore, Plaintiff was an M-I employee removing M-I equipment under the supervision of an M-I supervisor at the time of his alleged injuries. Defendants had no duty to intercede with the manner in which Plaintiff and Mr. Johnson chose to

---

[7]In addition to defendants addressing plaintiff's negligence claim under general maritime law, the Court notes a review of plaintiff's complaint leads the Court to conclude the complaint provides sufficient notice of a negligence claim under general maritime law.

perform their task and no duty to ensure that they performed their task in a reasonably safe manner. *Arabie, Id.* at 1117. It is undisputed that it was M-l's responsibility to rig down their equipment and M-l was in charge of the job during which Plaintiff was allegedly injured. See *Exhibit C* - Deposition of Dietzen at pp. 23, 62; *Exhibit A* - Deposition of Plaintiff at pp. 208-209. No employee or representative or Kerr-McGee directed Plaintiff how to accomplish rigging down M-l equipment. See *Exhibit A* - Deposition of Plaintiff at p. 69; *Exhibit E* - Deposition of Johnston at p. 22. Furthermore, Plaintiff testified that when his supervisor, Mr. Johnston, requested assistance, it was provided. See *Exhibit A* - Deposition of Plaintiff at p. 86. Under these circumstances, Plaintiff cannot establish that Defendants owed him a duty that was breached.

[Doc. 54-9, pp. 15-16]

As noted in the above text, defendants bolster their position by analogizing the facts of this matter to those in Arabie v. Chevron U.S.A., Inc., 688 F.Supp. 1111 (W.D.La. 1988)(J.Scott). Defendants note Arabie involved a slip and fall on a platform on the Outer Continental Shelf, and thus applied Louisiana negligence law, but argue, "its discussion of the existence of legal duty owed by the platform owner to the plaintiff to protect against the particular risk involved is as pertinent to the matter at bar as the facts are analogous."[8] [Doc. 54-9, p.13]

In Arabie, the plaintiff was a service technician employed by Geolograph, an independent contractor who leased a centrifuged unitized skid to Chevron (the platform owner) for the treatment of drilling mud. Id. at 1112. Geolograph maintained ownership of the equipment, installed the equipment on Chevron's platform, and serviced the equipment. Id. Plaintiff was repairing Geolograph's skid at Chevron's request when he allegedly slipped on a muddy floor in the area in which he was working. Plaintiff sued Chevron and Noble, "contending that the platform in question

---

[8]The Court additionally notes, "OCSLA adopts the law of the adjacent state as surrogate federal law, *to the extent that it is not inconsistent with other federal laws and regulations.*" Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir. 2003)(emphasis added); *see also* 43 U.S.C. § 1333(a)(2)(A); Arabie at 1114.

was defectively designed, was improperly supervised, and was in a state of disrepair, and was negligently maintained by the agents or employees of defendants." Id. (internal quotations omitted) At the close of plaintiff's case-in-chief at trial, the court granted defendants' motion for directed verdict, stating as follows:

> We hold that neither Chevron nor the drilling operator working on its platform, Noble Drilling Corporation, failed to exercise reasonable care under the circumstances, and therefore, neither is liable for plaintiff's injury. During his testimony at trial, plaintiff repeated that prior to his accident he had observed drilling mud on the deck in the immediate vicinity of the centrifuge skid. At one point plaintiff saw mud flinging and spewing from the bayright effluent return pump. He also witnessed mud dripping onto the deck when he himself disconnected various flow lines to and from the pump. Plaintiff also testified that he had worked in similar situations before. As a sales and service technician for Geolograph, plaintiff frequently encountered drilling mud when installing, repairing, and removing mud equipment on offshore platforms. He was certainly aware that drilling mud can be slippery to walk upon. Despite this knowledge and having plainly seen the mud on the deck, plaintiff made no effort to wash the mud from the deck or to notify anyone with Chevron or Noble so that their employees could clean the area. Instead, he chose to stand in the mud and lift the pump without assistance. The only reason that plaintiff offered for not taking remedial action beforehand was that he did not consider the conditions hazardous and did not anticipate a problem with lifting the pump alone. Thus, it is clear under the circumstances that plaintiff was fully aware of the hazardous condition complained about but voluntarily chose to encounter it anyway, and thereby failed to exercise reasonable care for his own safety. There was no breach of duty on the part of defendants and plaintiff's own negligence was the sole proximate cause of the accident.

> ...

> Having found that plaintiff has failed to make a sufficient showing concerning essential elements of his case, i.e., that defendants had a legal duty to protect him from the risk of harm encountered in this case and that defendants breached that duty, we hold that there is no genuine issue as to any material fact which could properly be submitted to the jury.

Id. at 1116-1117 (citations omitted).

With regard to plaintiff's assertion defendants should not have "rushed" plaintiff, defendants

cite deposition testimony of various M-I employees and supervisors, as well as plaintiff's deposition

testimony, which shows most, if not all companies using M-I's equipment wanted M-I's equipment

installed or removed as quickly as possible. [Doc. 54-4, p.17; 54-9, p.11; 54-6, pp. 78-9]

Defendants also note plaintiff worked substantially the same schedule on his previous job with M-I.[9]

Defendant concludes, "Thus, Plaintiff cannot establish the existence of a duty not to be hurried based

solely on Kerr-McGee's alleged need to have M-I dismantle its equipment quickly." [Doc. 54, p. 12]

As to plaintiff's allegation that defendants should have provided him a come-along,

defendants argue they had no duty to provide M-I employees with equipment M-I needed to

disassemble its auger system. [Doc. 54, pp. 16-17] Defendants state it was M-I's duty to provide

all necessary tools for its work aboard Kerr-McGee's vessel, citing the Master Service Agreement

between Kerr-McGee and M-I. [Doc. 54-7, p.1][10] Defendant further notes M-I guaranteed the

---

[9]As noted in the section entitled "Factual Background," *supra*, plaintiff was only assigned two jobs, aboard two different vessels, during his brief employment with M-I.

[10]The Master Service Agreement states, in pertinent part, as follows:

WHEREAS, Contractor [M-I] represents that it has adequate equipment in good working order and fully trained personnel capable of efficiently operating such equipment and performing services for Kerr-McGee.

...

2.... Contractor warrants that it will perform such work and/or services with due diligence and in a safe, competent and workmanlike manner. Contractor shall comply with all federal, state and municipal laws, rules and regulations applicable to any part of the work or services. Contractor shall furnish, at its own cost and expense, all labor, material, supplies, machines, equipment, tools, transportation and other items necessary in the performance of the work and services covered hereby, except such of said items as Kerr-McGee specifically agrees to furnish at the time an item of work or services is ordered or authorized by it hereunder. ...

...

5.Contractor is an independent contractor, free of control and supervision by

adequacy and utility of its equipment, as well as the training and abilities of its personnel to perform the services requested by Kerr-McGee. [Id.] Additionally, M-I's Senior Sales and Service Manager, Chris Dietzen, testified "comealongs and chain hoists are readily accessible on every rig that I've ever been on, plus we pack them in our [M-I's] toolboxes as well." [Doc. 54-4, pp. 31-32.] Furthermore, Mr. Gant, a Diamond welder who disengaged the welds on the auger system, testified come-alongs were readily accessible to anyone on the M/V Ocean Concord in an unlocked area.[11] [Depo. of Gant, p. 113]

Plaintiff's response to defendant's argument is as follows[12]:

> Kerr contends that it only had no duty to avoid rushing the Plaintiff and Diamond contends that the Plaintiff cannot prove a breach of its duty to only provide him with come alongs. That is a very cursory statement of facts. Those are fact sensitive issues. And, those facts are in dispute.

> In this case, the Plaintiff contends that he was sent by **M-I** before his training was completed to work aboard the vessel M/V OCEAN CONCORD. The vessel was owned and operated by **DIAMOND** and was in navigation at the time. **KERR** had

---

Kerr-McGee as to the means or manner of performing all work or services hereunder, Kerr-McGee having contracted herein solely for the result of such work or services.

[Doc. 54-7, p.1]

[11]On this issue, Mr. Gant testified as follows:

Q    Were come-alongs readily accessible on the rig?

A    Oh, yes, sir. We had one place that they were stored, and everybody on the rig that was there knew where they was at and the easy access. None of them was locked up. It was easy access to anything. M-I, anybody onboard the rig, has access to them at any time. They did at that time. I'm not quite sure what they have there now because I've been gone for two (2) years.

[Doc. 54-5, p.113]

[12]With the exception of one paragraph addressing plaintiff's seaman status, the Court has quoted the entirety of plaintiff's argument contained in the opposition memorandum.

chartered the vessel and had a company man aboard it. The Plaintiff was required to work in a crowed, cluttered, and muddy shaker room aboard the vessel without proper worker assistance and equipment from **M-I, DIAMOND, and KERR**. Mr. Joshua Johnson, his supervisory co-worker, tried to get that help from **M-I**'s Mr. Chris Dietzen said there was no one left to send out. Mr. Johnson then tried to get **DIAMOND and/or KERR** to furnish the needed personnel and equipment, which initially was denied. Finally, **DIAMOND and KERR** authorized the assignment of **DIAMOND** employees and equipment to the job. The **KERR** company man pushed the two **M-I** men to rush the removal of **M-I** auger and trough equipment from the vessel immediately. They worked very hard for very prolonged times, even when the required man power arrived. Mr. Thibodeaux had worked 55 hours from April 12 to April 16, 2005 on another vessel. He had one day off. He then went out with Mr. Johnson on the OCEAN CONCORD and worked 62 hours from April 18 to April 21, 2005. He was very, very tired. The **M-I** men needed equipment, including come alongs, or other necessary pieces of equipment as well, to cut and remove the auger/trough system. Mr. Thibodeaux slipped on the slick shaker room floor in cramped conditions and injured his back while helping carry a cut auger or trough out.

The Defendants are attempting to gloss over the law that a Motion for Summary Judgment involves disputes of _fact_, not of _law_. There is an absolute abundance of disputed facts. The Plaintiff's version of what happened differs radically from those of the Defendants. The Thibodeaux testimony is set forth above. The Court is asked to compare that with the testimony of Mr. Johnson, Senior Supervisor on the rig, and Mr. Kietzen, Senior Sales and Service Manage, both of **M-I**, and Mr. Gant, who did some welding in connection with the job, and Mr. Jones, who was the medic, both employed by **DIAMOND**. Of those four (4) witnesses, three (3) are long time employees in supervisory positions with their companies. They are not likely to bite the hand of their employer which feeds them. Mr. Johnson presumably is in the service. Mr. Johnson was at the job the whole time he was on the OCEAN CONCORD. Mr. Gant was there for a few hours, cutting and welding in the shaker room. Mr. Jones, the Medic, was not present in the shaker room. Those four (4) witnesses all said essentially that they did not know anything about **MR. THIBODEAUX** hurting his back on the vessel.[13]

[Doc. 56, pp. 4-5]

---

[13]The court notes no deposition has been submitted to the Court by plaintiff. (Portions of certain depositions have been provided by defendants in support of their motion.) Moreover, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Forsyth v. Barr, 19 F.3d, 1527, 1537 (5th Cir. 1994)(quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 (5th Cir. 1992)).

The Court finds plaintiff has failed to carry his burden, in opposition to motion for summary judgment, to "set forth specific facts showing that there is a genuine issue for trial." FED R. CIV. PRO. 56(e); *see also* Little at 1075 (plaintiff's burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence.) More particularly, plaintiff has failed to show defendants breached their duty of exercising reasonable care under the circumstances. Plaintiff testified he was aware there was drilling mud on the floor in the area he was working, and that he had caused some of the mud to spew on the floor when hosing out the troughs on the auger. [Doc. 54-2, pp. 64-65, 80] He also testified he was aware the floor had become slick from the mud, because he was slipping in the mud prior to his fall. [Id.] On the other hand, plaintiff has offered no evidence to show that his work was supervised or directed by either defendant, or that defendants directed the manner in which the equipment was removed.[14] Additionally, plaintiff has offered no evidence showing it was a breach of defendants' duty to not provide him a come-along. All evidence submitted shows it was M-I's duty to provide come-alongs, and come-alongs were available for plaintiff's use. In sum, plaintiff has offered no evidence whereby this Court could find that defendant breached its duty of reasonable care by failing to clean a messy floor which was, in part, of plaintiff's own making. Defendants have identified, in their brief, the absence of evidence to support plaintiff's prima facie claim, particularly, the absence of evidence to show they breached their duty to exercise reasonable care. Thus, the burden shifts to plaintiff to demonstrate, by competent summary judgment proof, there is an issue

---

[14]Even accepting plaintiff's statement that the Kerr-McGee company man told him to "hurry up," this Court finds that statement is insufficient, in and of itself, to establish or create a question of fact as to whether defendants exercised control over the manner or method in which plaintiff completed his work, such that they should have been aware of the muddy floor (created in part by plaintiff) and advised him to remedy the situation before completing his work.

of material fact warranting a trial.[15] Plaintiff has failed to carry that burden.  Accordingly, summary judgment in favor of defendants is mandated, and the motion is granted.[16]

## CONCLUSION

Due to the foregoing, the motion for summary judgment is GRANTED in its entirety.  As it appears all claims have now been dismissed, the parties are ORDERED to submit a FINAL JUDGMENT, approved as to form, within fifteen days of issuance of this ruling.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this _____ day of _____, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT COURT

---

[15]*See* Lindsey at 616 ("[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.")

[16]*See* Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986)(emphasis added)("[T]he plain language of Rule 56(c) *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")